**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWARD TOBIN, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>              Defendants. | Civil Action No. 2:18-cv-12473-JLL-SCM<br><br>Motion Return Date:  December 17, 2018 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Dated:  December 3, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor (*Pro Hac Vice*)
Andrew J. Obergfell
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7129
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
            aobergfell@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................1

LEGAL STANDARD.............................................................................................2

ARGUMENT ..........................................................................................................4

I.     PLAINTIFF STATES A CLAIM FOR BREACH OF
      EXPRESS WARRANTY .............................................................................4

      A.     Plaintiff's Breach Of Express Warranty Claim Is Not
         Based On Defendant's Limited Warranty ...............................4

      B.     Defendant Cannot Use Its Limited Warranty to
         Contradict its "Full HD 1080p" Warranty ............................7

II.     PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE
      MAGNUSON-MOSS WARRANTY ACT................................................11

III.     PLAINTIFF STATES CLAIMS FOR FRAUD AND
      FRAUDULENT CONCEALMENT ..........................................................12

      A.     Defendant Misled Consumers With Material
         Misrepresentations And Omissions......................................12

      B.     Plaintiff Pleads His Fraud-Based Claims With
         Particularity ..........................................................................13

      C.     Plaintiff Adequately Pleads Scienter....................................15

      D.     The Economic Loss Rule Does Not Bar Plaintiff's Fraud
         Claims...................................................................................21

IV.     PLAINTIFF STATES A CLAIM UNDER NEW YORK
      GENERAL BUSINESS LAW §§ 349 & 350 ............................................22

      A.     Plaintiff Alleges That Defendant Issued A Misleading
         Advertisement ......................................................................22

      B.     Defendant's Limited Warranty Did Not Render Its
         Statements and Omissions Any Less Misleading ...............24

      C.     Plaintiff Alleges Financial Injury.........................................27

      D.     Defendant Does Not Challenge Plaintiff's GBL Claims
         Based On Its Material Omissions.........................................28

i

V.     PLAINTIFF HAS STANDING TO PURSUE CLAIMS FOR
       PRODUCTS NOT PURCHASED ...............................................................30

VI.    CONCLUSION...............................................................................................32

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. 2010)....................................................................29

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J 2009) ....................................................................4

*Aretakis v. Caesars Entm't*,
  2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018)....................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................2, 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................2, 3

*Borman's, Inc. v. Olympic Mills, Inc.*,
  1993 WL 190344 (S.D.N.Y. June 2, 1993) .......................................................7, 8

*C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Sec. Litig.)*,
  311 F.3d 198 (3d Cir. 2002)............................................................................14

*Cali v. Chrysler Grp. LLC*,
  2011 WL 383952 (S.D.N.Y. Jan. 18, 2011) .......................................................11

*Cirulli v. Hyundai Motor Co.*,
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ....................................................20

*Computech Intern., Inc. v. Compaq Computer Corp.*,
  2004 WL 1126320 (S.D.N.Y. May 21, 2004) ....................................................22

*Conley v. Gibson*,
  355 U.S. 41 (1957)........................................................................................3

*Cooper v. Samsung Elecs. Am., Inc.*,
  2008 WL 4513924 (D.N.J. Sept. 30, 2008) .......................................................11

*Cooper v. Samsung Electronics Am., Inc.*,
  374 Fed. Appx. 250 (3d Cir. 2010) ..........................................................6

*Dixon v. Ford Motor Co.*,
  2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ............................... 23, 30

*Dzielak v. Whirlpool Corp.*,
  26 F. Supp. 3d 304 (D.N.J. 2014) ......................................................6, 7

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  387 F. Supp. 2d 265 (S.D.N.Y.2004)....................................................22

*Elkind v. Revlon Consumer Prod. Corp.*,
  2015 WL 2344134 (E.D.N.Y. May 14, 2015) ......................................21

*Garcia v. Chrysler Group LLC*,
  2015 WL 5123134 (S.D.N.Y. Sept. 1, 2015)........................................30

*Gladden v. Cadillac Motor Car Div., General Motors Corp.*,
  83 N.J. 320 (1980)..................................................................................8

*Goshen v. Mutual Life Insurance Co. of New York*,
  98 N.Y.2d 314 (2002) ..........................................................................27

*Haas v. Pittsburgh National Bank*,
  526 F.2d 1083 (3d Cir. 1975)...............................................................32

*Hartford Fire Ins. Co. v. Roadtec, Inc.*,
  2010 WL 4967979 (S.D.N.Y. Nov. 29, 2010)...................................9, 10

*Hollis-Arrington v. PHH Mortg. Corp.*,
  2005 WL 3077853 (D.N.J. Nov. 15, 2005) ..........................................18

*Hunt Const. Grp., Inc. v. Farina*,
  2012 WL 72286 (D.N.J. Jan. 10, 2012) ...............................................15

*Imperia v. Marvin Windows of New York, Inc.*,
  747 N.Y.S.2d 35 (2d Dep't 2002) ..........................................................8

*In re AZEK*,
  82 F. Supp. 3d, n.5 .................................................................................9

iv

*In re Gerber Probiotic Sales Practices Litig.*,
    2014 WL 5092920 (D.N.J. Oct. 10, 2014).......................................................... 32, 33

*In re Gerber*,
    2014 WL 1310038................................................................................................29

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)................................................................................13

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
    2018 WL 4144683 (D.N.J. Aug. 29, 2018) .................................................. 16, 17

*Klakis v. Nationwide Leisure Corp.*,
    422 N.Y.S.2d 407 (1st Dep't 1979) .....................................................................25

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017).......................................................... 24, 25

*Leon v. Rite Aid Corp.*,
    340 N.J. Super. 462 (App. Div. 2001) .................................................................25

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)....................................................................................4

*Miller v. Chrysler Grp. LLC*,
    2014 WL 12617598 (D.N.J. June 30, 2014) ........................................................11

*Myers v. BMW of N. Am., LLC*,
    2016 WL 5897740 (N.D. Cal. Oct. 11, 2016)......................................................16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)................................................................................31

*Neuss v. Rubi Rose LLC*,
    2017 WL 2367056 (D.N.J. May 31, 2017) ..........................................................33

*Noble v. Samsung Elecs. Am., Inc.*,
    2018 WL 801590 (D.N.J. Feb. 8, 2018) ................................................................8

*Norwest Fin. Leasing, Inc. v. Parish of St. Augustine*,
    674 N.Y.S.2d 312 (1st Dep't 1998) .......................................................................8

v

*Orellana v. Macy's Retail Holdings, Inc.*,
2018 WL 3368716 (S.D.N.Y. 2018) .............................................................. 26, 28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ........................................................................................30

*Peruto v. TimberTech Ltd.*,
126 F. Supp. 3d 447 (D.N.J. 2015) ...................................................................8

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ..........................................................................3, 33

*POM Wonderful LLC v. Organic Juice USA, Inc.*,
2010 WL 3912222 (S.D.N.Y. Sept. 29, 2010) ................................................30

*Potler v. MCP Facilities Corp.*,
471 F. Supp. 1344 (E.D.N.Y. 1979) .................................................................8

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995) ...........................................................................12

*Sharma v. BMW of N. Am. LLC*,
2016 WL 4395470 (N.D. Cal. Aug. 18, 2016) ................................................20

*Silva v. Smucker Nat. Foods, Inc.*,
2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................................................22

*Solomon v. Bell Atl. Corp.*,
777 N.Y.S.2d 50 (N.Y. App. Div. 2004) .........................................................30

*Spera v. Samsung Elecs. Am., Inc.*,
2014 WL 1334256 (D.N.J. Apr. 2, 2014) .................................................. 20, 21

*Stewart v. Smart Balance, Inc.*,
2012 WL 4168584 (D.N.J. June 26, 2012) ........................................... 25, 31, 32

*Szymczak v. Nissan N. Am., Inc.*,
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) .............................................. 11, 30

*Tomasino v. Estee Lauder Cos., Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ........................................................ 23, 24

*Tomassini v. FCA U.S. LLC*,
  2015 WL 3868343 (N.D.N.Y. June 23, 2015)........................................................30

*Union Ink Co., Inc. v. AT&T Corp.*,
  352 N.J. Super. 617 (App. Div. 2002) .................................................................25

*Viking Yacht Co. v. Composites One LLC*,
  496 F. Supp. 2d 462 (D.N.J. 2007) .......................................................................8

*VTech Holdings Ltd. v. Lucent Techs., Inc.*,
  172 F. Supp. 2d 435 (S.D.N.Y. 2001).................................................................12

*Ward v. TheLadders.com, Inc.*,
  3 F. Supp. 3d 151 (S.D.N.Y. 2014)................................................................ 27, 28

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015)..................................................................21

*Weske v. Samsung Elecs., Am., Inc.*,
  934 F. Supp. 2d 698 (D.N.J. 2013) ................................................................ 20, 21

*West Penn Allegheny Health Sys. Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010).....................................................................................3

*Wintel Serv. Corp. v. MSW Electronics Corp.*,
  556 N.Y.S.2d 359 (2d Dep't 1990)........................................................................8

*Woods v. Maytag Co.*,
  2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010)......................................................23

## STATUTES

N.Y. U.C.C. 2-316(...................................................................................................7

N.Y. U.C.C. 2-316(1).................................................................................................7

N.Y.G.B.L. § 349 ............................................................................................ passim

N.Y.G.B.L. § 350 ............................................................................................ passim

## RULES

Fed. R. Civ. P. 8(a)(2) ...............................................................................................2

vii

Fed. R. Civ. P. 9(b) ........................................................................15

**REGULATIONS**

16 C.F.R. § 1102.10 (b)(1)......................................................... 17, 19

16 C.F.R. § 1102.10 (d)(7).............................................................17

**OTHER AUTHORITES**

*T. Quinn, Quinn's Uniform Commercial Code Commentary and,*
   Law Digest (2d Ed. 1991) ........................................................8

# **INTRODUCTION**

This is a simple case.  Plaintiff purchased an LED TV from Defendant advertised as displaying in "Full 1080p."  However, due to a uniform design defect that affected numerous models of Defendant's televisions, Plaintiff's TV overheated and melted.  As a result, a large swathe of the pixels on Plaintiff's TV were destroyed, rendering the TV unusable and denying him the full resolution that he bargained for.  Now, Samsung, a supposedly "consumer-friendly company," disclaims liability for selling the Products it defectively designed.  The law says otherwise.

Defendant spends the bulk of its motion to dismiss (hereinafter, the "MTD") arguing that Plaintiff's warranty claims should be dismissed because Plaintiff did not comply with the Limited Warranty's notice requirement.  MTD at 10.  But Defendant ignores that Plaintiff's express warranty claims are based on Defendant's "Full HD 1080p" representation, which uniformly appears on the outer packaging of all Products.  This warranty is entirely separate from Defendant's Limited Warranty.  Defendant's attempt to disclaim the express warranty on the Products' outer packaging with fine print tucked at the very back of a User Manual is meritless.  Defendant's arguments against Plaintiff's GBL claims fail for the same reason—Plaintiff's First Amended Complaint ("FAC")

1

identifies the misleading statements and omissions, and Defendant's purported disclaimers to the contrary are unenforceable.  *See, e.g.*, *infra* § IV.

Defendant also argues that Plaintiff's fails to plead his fraud claims with particularity under Rule 9(b).  But Plaintiff's allegations set forth the "who, what, when, where, and how" of the alleged fraud.  That is sufficient to put Defendant on notice of the claims against it.  Furthermore, Plaintiff's allegations show that Defendant had exclusive knowledge of the design defect long before Plaintiff purchased the Product, yet failed to disclose that information to Plaintiff at the time of the sale.  *See infra* § III.C.

As set forth in detail below, Defendant's arguments in support of dismissal ignore the allegations in the FAC and lack merit.  Defendant's motion should therefore be denied in its entirety.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's short and plain statement of the claim must "give the

defendants fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (2007). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

To state a claim for fraudulent concealment, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting

3

damages." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J 2009). The "[d]eliberate suppression of a material fact that should be disclosed" is "equivalent to a material or affirmative misrepresentation, which will support a common law fraud action". *Id.*   However, there is no duty to disclose a fact "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship,'" such as a fiduciary relationship.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993).

## <u>ARGUMENT</u>

## I.   PLAINTIFF STATES A CLAIM FOR BREACH OF EXPRESS WARRANTY

### A.   Plaintiff's Breach Of Express Warranty Claim Is Not Based On Defendant's Limited Warranty

Defendant argues that Plaintiff's claim for breach of express warranty fails because "Plaintiff never alleges that he contacted SEA within the one-year warranty period" as required by the Limited Warranty.  MTD at 10-11.  That is incorrect.  Plaintiff's breach of express warranty claim is based on Defendant's "Full HD 1080p" promise on the Product's outer packaging, which is entirely separate from the Limited Warranty.

By its very terms, the Limited Warranty for the Products applies only to "manufacturing defects <u>in materials and workmanship</u>."  Heal Decl. Ex. 1 (ECF No. 21-4) at 20 (emphasis added).  Here, however, Plaintiff's breach of express

warranty claim is not related to the materials used in manufacturing his television or the workmanship that went into assembling it.  Rather, as the FAC makes clear, Plaintiff alleges a <u>design</u> defect that caused his television to overheat and denied him the "Full HD 1080p" resolution that Defendant promised on its packaging. *See* FAC ¶ 1 ("This is a class action . . . for the manufacture and sale of certain Samsung LED Televisions . . . all of which suffer from an identical design defect."); *id.* ¶ 45 (the televisions "did not function properly as television sets due to their defective design"); *id.* ¶ 48 ("The Samsung LED TVs were defectively designed"); *id.* ¶ 75 (the Products "cannot display in 'Full HD 1080p' because they are defectively designed"); *id.* ¶ 80 ("Samsung knew at all material times that its LED TVs were designed defectively").  Nowhere does the FAC make any mention of materials or workmanship.  The section of the FAC setting out the express warranty claim likewise references the "Full HD 1080p" promise, not Defendant's Limited Warranty.  *Id.* ¶¶ 34-41.  Even Defendant acknowledges that its "Full HD 1080p" is an express warranty distinct from its Limited Warranty.  MTD at 11 ("The Limited Warranty Does Not Provide the Warranties Alleged by Plaintiff").

This distinction between (1) Defendant's Limited Warranty and (2) its separate express warranty that the Products would display "Full HD 1080p" is a critical one.  While a claim based on the Limited Warranty would have to comply with its express notice requirements, a Plaintiff asserting a claim that Defendant

breached an express warranty under New York law would only have to comply with the notice requirements in the U.C.C.  Here, Plaintiff alleges that, prior to filing, he mailed Defendant a notice letter that complied in all respects with the U.C.C.  FAC ¶ 41.   That is sufficient.

*Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304 (D.N.J. 2014) is instructive on this point.  There, the plaintiffs alleged a breach of express warranty based on the manufacturer's failure to provide the energy efficiency promised by the Energy Star logo attached to its washing machines.  *Id.* at 316.  In response, Whirlpool argued that its limited warranty related only to "defects in materials or workmanship," and thus did not cover include any promises related to the washers. *Id.* at 326.  The court disagreed, finding that the limited warranty and the express warranty were entirely separate:

> Defendants cite *Cooper v. Samsung Electronics Am., Inc.*, 374 Fed. Appx. 250, 253 (3d Cir. 2010).  There, the plaintiff explicitly based his breach of warranty claim on a limited warranty that only covered "manufacturing defects in materials and workmanship" in a television. *Id.*  Substantively, however, his complaint was that the television did not perform as promised in its advertisements and packaging.  The Court concluded that, because plaintiff had not alleged a manufacturing defect, his claim under the limited warranty could not survive. *Id.* at 253-54.  Here, Plaintiffs base their claim on a **separate express warranty**—the Energy Star logo—**not the limited warranty** provided by the manufacturer.

6

*Id.* at 327 n.12 (emphasis added).  This case is no different.  Here, Plaintiff's claim is based on a separate express warranty—the "Full HD 1080p" promise—not Defendant's limited warranty.

### B.    Defendant Cannot Use Its Limited Warranty to Contradict its "Full HD 1080p" Warranty

Defendant argues Plaintiff's express warranty claims should also be dismissed because "the Limited Warranty expressly disclaims the existence of any other warranties."  MTD at 12.  This is incorrect.  Defendant cannot use a general disclaimer buried in the back of its user manual to repudiate an express warranty placed conspicuously on its packaging.

Under New York law, "if an express warranty and a disclaimer cannot be read consistently," the "negation or limitation [of the warranty] is inoperative." *Borman's, Inc. v. Olympic Mills, Inc.*, 1993 WL 190344, at *5 (S.D.N.Y. June 2, 1993) (quoting N.Y. U.C.C. 2-316(1)).  One commentator has described the effect of § 2-316 as follows:

> Given a head-on conflict between an express warranty and a disclaimer, the disclaimer is the one that suffers.  It is legally ineffective.  Gone.  Kaput. . . . [t]he express warranty is as tenacious as a pitbull.  Once it is in place, it never lets go and all the disclaimers in the world are simply so many shouts that it does not even hear.

*Id.* (citing T. Quinn, Quinn's Uniform Commercial Code Commentary and Law Digest, ¶ 2–313 [A][11], at p. 2-219 (2d Ed. 1991)).  *See also Potler v. MCP*

7

*Facilities Corp.*, 471 F. Supp. 1344, 1351 (E.D.N.Y. 1979) (because disclaimer cannot be reasonably construed as consistent with express warranties, disclaimer is inoperative); *Imperia v. Marvin Windows of New York, Inc.*, 747 N.Y.S.2d 35, 37 (2d Dep't 2002) (express warranties are not negated "by the general disclaimers of warranty that accompanied the sale of the products"); *Norwest Fin. Leasing, Inc. v. Parish of St. Augustine*, 674 N.Y.S.2d 312, 313 (1st Dep't 1998) ("the general disclaimer of warranties was inconsistent with the express undertaking to service and repair the leased equipment, and is therefore ineffective"); *Wintel Serv. Corp. v. MSW Electronics Corp.*, 556 N.Y.S.2d 359, 360 (2d Dep't 1990) (general disclaimer ineffective if inconsistent with express warranty).[1]

---

[1] The same principles apply under New Jersey law as well. *See, e.g.*, *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320, 330 (1980) (holding that even a conspicuous disclaimer "may nevertheless be deemed inoperable if 'unreasonably inconsistent' with the express warranties given."); *Noble v. Samsung Elecs. Am., Inc.*, 2018 WL 801590, at *6 (D.N.J. Feb. 8, 2018) ("The disclaimer in the Smartwatch's SLW is inconsistent with the representations made by Samsung about the Smartwatch's battery life," and are thus "inoperative and cannot serve as the basis for dismissing Plaintiff's express and implied warranty claims."); *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 470 (D.N.J. 2007) ("While the disclaimer here was clear and conspicuous, it is ineffective to the extent that it is inconsistent with the promise of improved flexibility found in the PB-58."); *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 456-57 (D.N.J. 2015) (finding a limited warranty that excluded from coverage changes in product color inconsistent with an express warranty promising that the product color would withstand weathering); *In re AZEK*, 82 F. Supp. 3d at 617, n.5 (finding a limited warranty that disclaimed any express warranty inconsistent with an express warranty guaranteeing that the product would not rot, stain, or fade).

Here, it is entirely inconsistent for Defendant to provide an express warranty on the front packaging of the Products that the televisions inside will provide "Full HD 1080p" display while, buried deep inside in a user manual, it disclaims all express warranties.  New York law is clear that, in such circumstances, the express warranty wins out over the disclaimer that there are no such warranties. Defendant's disclaimer is also ineffective because it would not put a reasonable consumer on notice that it was disclaiming its "Full HD 1080p" express warranty:

> In this case, the disclaimer was written in bold, but was inserted at the end of two lengthy reference manuals, each of which was "several hundred pages long."  This is not an "eye-catching location" that commands "the attention of the non-drafting party."  Moreover, the disclaimer does not appear in the document that lays out the terms of the sale, but instead is set forth as the last page in a user's manual and parts manual.  While a reasonable purchaser may be expected to read terms that are referenced near the signature line of a contract, there is no reason for a buyer to expect a warranty disclaimer to be set forth as the last page of a user's manual or parts manual.

*Hartford Fire Ins. Co. v. Roadtec, Inc.*, 2010 WL 4967979, at *6 (S.D.N.Y. Nov. 29, 2010) (internal citations omitted).

Defendant argues that Plaintiff's express warranty claim should also be dismissed because he does not specify what written warranty he is referring to or how it breached that express warranty.  MTD at 11-14.  Incorrect.  The FAC alleges that Defendant expressly "warranted that the Samsung LED TVs would

9

display in 'Full HD 1080p.'"  FAC ¶ 36.  Plaintiff also alleges that this

representation appeared on the Product's outer packaging.  FAC ¶ 12 ("Samsung

uniformly represents on the Products' packaging that its LED TVs display in "Full

HD 1080p."); *id.* ¶5 (alleging that Plaintiff reviewed/relied upon the Product's

outer packaging, including "Full HD 1080p" representation).  The FAC then

explains that Defendant breached this express warranty because the Products do

not in fact display in Full HD 1080p as advertised:

> Samsung uniformly represents on the Products'
> packaging that its LED TVs display in "Full HD 1080p."
> "1080p" refers to high-definition video characterized by
> 1,920 pixels displayed across the screen horizontally and
> 1,080 pixels down the screen vertically. However, due to
> the Products' manufacturing defect, a portion, if not all,
> of the Products' pixels on the screen become blacked out
> and/or fatally obscured.  Thus, consumers are being
> robbed of the full advertised display.

FAC ¶ 12; *id.* ¶ 37 ("In fact, the Samsung LED TVs do not display in "Full HD

1080p" due to their defective nature and propensity to overheat, which causes all

or a portion of the Products' display to become blacked out and/or obscured,

robbing consumers of the full advertised display.").[2]

---

[2] Plaintiff also adequately pleads that Defendant's Limited warranty is
unenforceable as substantively unconscionable.  FAC ¶¶ 38-39.  "Whether
plaintiffs can actually prove such a claim is better left for after the completion of
discovery."  *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *10 (S.D.N.Y.
Dec. 16, 2011); *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *3
(D.N.J. Sept. 30, 2008) (Linares, J.) ("Because Cooper has plead unconscionability

10

## II.   PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

Defendant argues "if the Court dismissed express and implied warranty claims, it must do the same with claims based on the MMWA.  MTD at 20.  This is wrong because, as set forth *supra*, Plaintiff has properly stated claims for breach of express warranty under state law.  Therefore, he necessarily states a claim under the MMWA.  *See, e.g.*, *Cali v. Chrysler Grp. LLC*, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011) ("claims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law"); *Miller v. Chrysler Grp. LLC*, 2014 WL 12617598, at *6 (D.N.J. June 30, 2014) ("Claims under the MMWA 'stand or fall with [the claimant's] express and implied warranty claims under state law.' … Plaintiffs' MMWA claim survives along with the [implied] warranty claim discussed above." (internal citation omitted)).

Defendant also argues that Plaintiff's MMWA claim must be dismissed "to the extent Plaintiff did not provide SEA with an opportunity to cure prior to bringing sit."  MTD at 21, n.5.   However, Plaintiff's notice letter indeed gave Defendant an opportunity to cure.  *See* FAC, Ex. A (Notice Letter).

---

at this stage, and as unconscionability is more suitable for decision at summary judgment, this Court denies Defendant's motion to dismiss the express warranty claim based upon the one-year limitation to its term.").

11

## III.   PLAINTIFF STATES CLAIMS FOR FRAUD AND FRAUDULENT CONCEALMENT

### A.   Defendant Misled Consumers With Material Misrepresentations And Omissions

Defendant argues that Plaintiff's fraud-based claims fail because "his TV could—and *did*—display in Full HD 1080p." MTD at 27. But this mischaracterizes Plaintiff's fraud claims. This case is not about the resolution of Plaintiff's TV at the time of purchase, but rather that Defendant knew about a manufacturing defect in the Products and sold them anyway without disclosing that fact to consumers.

"A claim for fraud under New York common law consists of the following elements: (1) a material representation or omission of material fact; (2) that is false or misleading; (3) made with knowledge or reckless disregard of its falsity; (4) reliance; and (5) injury." *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001). A duty to disclose arises when "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995).

Here, Defendant had a duty to disclose that its TVs were defective because it "knew at all material times that its LED TVs were designed defectively and thus prone to overheating," while consumers did not. FAC ¶¶ 80-81. It was also well

12

aware that no consumer would be willing to pay full price for a defective TV.

Despite this, Defendant failed to disclose the defects in its TVs and knowingly

misstated that they would display "Full HD 1080p." *Id.* ¶¶ 75, 80-81.  Plaintiff and

consumers naturally relied on these representations and omissions in purchasing

Defendant's defective TVs and were thus financially injured.  *Id.* ¶¶ 76-77, 83-85.[3]

### B.      Plaintiff Pleads His Fraud-Based Claims With Particularity

Defendant also argues that Plaintiff's fraud-based claims are defective for

lack of specificity because "he does not provide names, dates, or any specific

statement that affected his decision to purchase." MTD at 28 (internal citation

omitted).  That is false.  As detailed below, Plaintiff sets forth "the who, what,

when, where, and how" of the alleged fraud as required by Rule 9(b).  That is

sufficient.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d

Cir. 2006); *C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Sec.*

*Litig.)*, 311 F.3d 198, 217 (3d Cir. 2002) (same).

**Who:**      The FAC alleges Defendant is responsible for making false and
              misleading representations/omissions about the Products.  *See* FAC ¶¶

---

[3] Defendant's argument that Plaintiff cannot demonstrate that Defendant's conduct
proximately caused him economic harm is nonsense.  MTD at 32.  First, having a
return policy is not a license to defraud consumers.  Second, Plaintiff sufficiently
alleges that Defendant's conduct was the proximate cause of his injury.  FAC ¶ 17
("As a direct result of Samsung's actions, Plaintiff and Class members have
suffered injury in fact, have been damages and have suffered a loss of money or
property for having paid money for a worthless product."); *see also id.* ¶¶ 33, 40,
51, 64, 71.

2-3, 12.  Defendant has not challenged this element in its motion to dismiss.

**What:**    The FAC identifies the exact representations on which Plaintiff relied in purchasing the Product.  *Id.* ¶ 5 ("In purchasing the Samsung LED TV, Mr. Tobin relied on Defendant's representation that the television would be fit to perform its intended purpose.  Mr. Tobin also relied on Defendant's representation that he was purchasing a television with a 'Full HD 1080p' display.  Mr. Tobin would not have purchased the Samsung LED TV, or would have done so on materially different terms, had he known that the Product would soon thereafter overheat and develop permanent vertical lines on its screen, rendering the Product useless, and robbing him of the full advertised display.").  Plaintiff alleges each of these statements are false and misleading.  *Id.* ¶¶ 2, 5, 12-14.  Plaintiff further alleges that "[t]he misrepresentations and omission made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Samsung LED TVs."  *Id.* ¶ 76.

**Where:**    The FAC alleges Defendant made the false and misleading statements directly on the Products' packaging.  *Id.* ¶¶ 5, 12.  Moreover, Plaintiff alleges the precise location where he purchased the Product.  Plaintiff purchased the Product "from a Best Buy store located in Patchogue, New York."  *Id.* ¶ 5.

**When:**    Plaintiff alleges the exact date that he purchased the Product.  Plaintiff purchased the Product on November 24, 2016.  *Id.* ¶ 5.  And Plaintiff alleges that he read and relied on Defendant's misrepresentations prior to purchase.  *Id.*

**How:**    The FAC explains how Defendant's statements were false and misleading.  *Id*. ¶¶ 11-12 ("Shortly after being purchased, Samsung LED TVs are fatally overheating despite just normal or even minimal use.  The overheating renders the Products useless and manifests itself in several forms, including but not limited to burning, melting, causing permanent horizonal and/or vertical lines to appear on the TV's screen, as well as other video anomalies. … Samsung uniformly represents on the Products' packaging that its LED TVs display in

14

'Full HD 1080p.' … However, due to the Products' manufacturing defect, a portion, if not all, of the Products' pixels on the screen become blacked out and/or fatally obscured.  Thus, consumers are being robbed of the full advertised display.").

### C.    Plaintiff Adequately Pleads Scienter

Next, Defendant argues that Plaintiff's scienter allegations are "boilerplate and conclusory."  MTD at 26.  That is incorrect.  Scienter can be alleged generally and does not require specificity.  Fed. R. Civ. P. 9(b); *Hunt Const. Grp., Inc. v. Farina*, 2012 WL 72286, at *5 (D.N.J. Jan. 10, 2012) ("[t]he heightened standard for pleading fraud is relaxed in circumstances where the information necessary to plead with particularity is concealed by defendants").  There can be little doubt that Plaintiff's allegations meet this standard.  *See* FAC ¶ 2 ("Online complaints, including those made to the Consumer Product Safety Commission, show that Defendant has been aware of the defect since at least 2014."); *id.* ¶ 13 ("numerous consumers have submitted photographs of their Samsung LED televisions to Samsung's official product forum website, us.community.samsung.com, as well as to Samsung's Twitter account and the Consumer Product Safety Commission, warning of the defective nature of Samsung's Products, and showing how the Products' defect has damaged the display on their respective Samsung LED TVs"); *id.* ¶ 14 (displaying complaints on Samsung's own product forum website and Twitter account); *id.* ¶ 15 ("Other news articles report that Samsung has

15

"acknowledge[d] overheating issues" with the televisions described herein.

Nevertheless, Samsung continues to sell the Products to unsuspecting consumers

upon the affirmative misrepresentation that the Products are LED televisions that

display in "Full HD 1080p" …); *id.* ¶ 75 ("These misrepresentations and omissions

were made with knowledge of their falsehood.").

Further, as one district court explained, "customer complaints may support

knowledge when they are submitted to a forum the defendant is likely to view, and

where they are submitted before the plaintiff purchased the product." *Myers v.*

*BMW of N. Am., LLC*, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016); *see also*

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at

*11 (D.N.J. Aug. 29, 2018) (holding that "Plaintiffs' knowledge-related allegations

[were] sufficient to withstand BMW NA's motion" largely because "Plaintiffs

plead that BMW NA monitored the NHTSA complaint log and became aware of

numerous sunroof-related complaints being made well before Plaintiffs purchased

their vehicles").

That is the case here.  As Defendant notes in its Motion to Dismiss, the

allegation about the consumer complaints in Paragraph 16 of the FAC comes from

the Consumer Product Safety Commission's ("CPSC's") website.  *See* MTD at 29.

One of the purposes of the CPSC website is to receive complaints about safety

problems with consumer products, and transmit information to manufacturers.  *See*

16

16 C.F.R. § 1102.10 (b)(1) (describing the use of CPSC's "Internet Website" to track consumer reporting); *id*. at § 1102.20 (CPSC required to transmit reports of harm to manufacturers).  Consumers who use the website to report information are required to click a box stating, "I certify that I have reviewed the Report and the information provided in it is true and accurate to the best of my knowledge, information, and belief."  *See* Ex. A, Verification Form; *see also* 16 C.F.R. § 1102.10 (d)(7) (describing verification requirement).[4]  One of the questions asked on the website is whether the consumer already notified the manufacturer about the problem, and all of the consumers referenced in the RJN with the exception of Ex. E indicate that they have.  *See* Exs. B, C, D, F.  In addition, the CPSC website discloses whether the report was "sent to the manufacturer," and again, the website states that all of the reports referenced in Paragraph 16 to were sent to Defendant, the first of which was sent on December 22, 2014.  *See id*.

Even if the Court concludes the allegations are deficient, Plaintiff could amend to provide even more allegations about Defendant's exclusive knowledge resulting from complaints posted to Samsung's Twitter account, its own product forum website, and the CPSC, that predate Plaintiff's purchase.  There are other reports on the CPSC website addressing the TVs at issue (which are non-hearsay

---

[4] All exhibits referenced in this memorandum are attached to the concurrently-filed Request for Judicial Notice.

and subject to judicial notice).[5]  Each report shows the date it was "sent to [the]

manufacturer," and all but one state that the consumer independently contacted

Defendant directly.  All models listed are among the models alleged in the FAC.

Examples include the following:

- Reported December 12, 2014/ Sent to Manufacturer December 22, 2014
  I bought a Samsung TV in February 2014. On December 8th, 2014 the TV
  started fire itself while I was watching. There was a big red flame behind my
  TV. I unplugged the TV so fire has stopped.  … My TV model number is:
  UN50F6350AFXZA.  Ex. B.

- Reported February 6, 2016/ Sent to Manufacturer February 16, 2016
  On February 5, 2016 about 10:30 pm I was watching tv and noticed a bright
  light in the lower left corner of my Samsung Smart tv, as I watched it got
  bigger and then a red spot appeared and it grew bigger also. I went to the tv
  and saw that it was actually on fire and immediately unplugged it. The frame
  and the screen were actually melted and very hot. I purchased the Samsung
  Smart HDTV Model UN50F5500AF in June of 2014. I believe this is a very
  serious safety hazard and that if I had not unplugged it, a serious fire would
  have resulted. I have reported this to Samsung today and am waiting to hear
  back from them.  Ex. C.

- Reported September 26, 2016/ Sent to Manufacturer October 4, 2016
  (Model Number: UN50F6300AFXZA) While watching TV the screen
  suddenly disappeared but the sound continued. On the bottom left of the
  screen was a black dot getting larger as I watched it. I got up and touched the
  screen which was so hot the plastic casing around the TV was melting, and
  burned my finger. I immediately turned the TV off, waited a few hours, and
  turned TV back on. Black dot began enlarging- I touched it again and
  burning my finger once more. The TV never regained the screen and I feel
  sure had I not been in the room the TV would have caught fire.  Ex. D.

---

[5] Documents subject to judicial notice may be considered on a motion to dismiss.
*See Hollis-Arrington v. PHH Mortg. Corp.*, 2005 WL 3077853, at *5 (D.N.J. Nov.
15, 2005).

- Reported October 5, 2016/ Sent to Manufacturer October 14, 2016 (Model Number: UN50F6300) Turned on the Television and saw a black patch on bottom left corner touching the bezel along with off color and horizontal lines. Attempted the self diagnostic feature of the smart TV to no avail.  5 minutes later the smell of plastic burning prompted me to look closer at the problem corner and saw the plastic melting then immediately unplugged.  Ex. E.

- Reported October 10, 2016/ Sent to Manufacturer October 18, 2016 (Model Number: UN50F5500AF) I was watching a pre-recorded program on my Samsung LED 5o inch TV. I paused it for approximately 25 minutes to work on my computer. I noticed striations in the image on the TV screen, which didn't make sense since it wasn't a live feed. I immediately turned the TV off and then noticed smoke coming from a spot on the lower left hand corner of the screen. I looked closer and saw that that spot had burned through the screen and had melted the plastic TV frame immediately under it. I turned the TV back on several hours later, the Samsung logo briefly appeared in gray tones and then the screen went blue, and where the burn spot was, there was a white spot with rainbow colors around it. The screen quickly went black and the TV was no longer functional.  Ex. F.

As of November 21, 2018, there are at least 97 reports of safety hazards with various televisions sold by Defendant, going back to 2011.  Ex. G.  It strains credulity that Defendant would not monitor a government website run by CPSC, particularly when so many of its products are listed on that website.  After all, that is what the website is for.  *See* 16 C.F.R. § 1102.10 (b)(1).  It is plausible to infer that companies pay close attention to reports about safety hazards of their products. In an analogous situation, many courts have held that safety data and reports from the NHTSA can support allegations of the defendant's prior knowledge, because responsible companies presumably monitor that information.  *See, e.g.*, *Cirulli v.*

*Hyundai Motor Co.*, 2009 WL 5788762, at \*4 (C.D. Cal. June 12, 2009); *Sharma v. BMW of N. Am. LLC*, 2016 WL 4395470, at \*9 (N.D. Cal. Aug. 18, 2016) ("A reasonable trier of fact could infer, however, that BMW, as a manufacturer of motor vehicles, had knowledge of the above-discussed findings by the NHTSA, specifically, that significantly under-inflated tires pose safety hazards"). It would be remarkable if Defendant took the position in open court that it recklessly ignores reports about its own products on the CPSC website, as well as its own Twitter account and product forum website. In short, Plaintiff sufficiently alleges Defendant's "superior knowledge" of the defect at issue, and those allegations are corroborated by the CPSC reports described above. At a bare minimum, the CPSC reports demonstrate that there would be a good faith basis to amend if the Court determines that amendment is necessary.

The cases relied on by Defendant—*Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698 (D.N.J. 2013) and *Spera v. Samsung Elecs. Am., Inc.*, 2014 WL 1334256 (D.N.J. Apr. 2, 2014)—are both distinguishable. In *Weske*, "Plaintiffs' allegation that Samsung discovered the Defect in 2006 [was] based on just two confirmed customer complaints and two unconfirmed reports posted in internet websites." *Weske*, 934 F. Supp. 2d at 703. Likewise, in *Spera*, the court found that the consumer complaints "lack[ed] specific facts supporting Samsung's knowledge of the alleged defect" prior to the plaintiff's purchase because the complaints

20

"[did] not pinpoint a specific time at which Samsung allegedly became aware of the purported defect." *Spera*, 2014 WL 1334256, at *7. Here, as explained *supra*, the numerous complaints submitted to the CPSC, as well as to Defendant's own product forum website and Twitter account,[6] pinpoint precisely when Defendant was put on notice of the Products' defect. Accordingly, *Weske* and *Spera* are inapposite.

### D.    The Economic Loss Rule Does Not Bar Plaintiff's Fraud Claims

Defendant argues that "Plaintiff's claims sounding in fraud are also barred by New York's economic loss rule." MTD at 32, n.13. That is wrong. Courts have regularly held "that New York's economic loss doctrine does not apply to intentional torts such as fraud." *Aretakis v. Caesars Entm't*, 2018 WL 1069450, at *12 (S.D.N.Y. Feb. 23, 2018); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (same); *Elkind v. Revlon Consumer Prod. Corp.*, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (same); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 278 (S.D.N.Y.2004) (noting that the court was not aware of any cases where New York courts applied the economic loss doctrine to fraud claims); *Computech Intern., Inc. v. Compaq Computer Corp.*,

---

[6] To the extent the Court finds it necessary, Plaintiff respectfully requests leave to amend to include the date/time of consumer complaints that pre-date Plaintiff's purchase posted to Defendant's product forum website and Twitter account.

21

2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) ("In the absence of any articulation to the contrary by the New York courts, the economic loss doctrine will not be presumed to extend to fraud claims.").

## IV.  PLAINTIFF STATES A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW §§ 349 & 350

### A.  Plaintiff Alleges That Defendant Issued A Misleading Advertisement

Defendant argues that Plaintiff's claims under GBL §§ 349 and 350 should be dismissed because the FAC "provides no detail about [the] deceptive or misleading statements or advertising" and because Plaintiff has not "discussed any advertising at all, let alone specific advertisements."  MTD at 33-34.  That is false.[7] Defendant's argument defies a plain reading of Plaintiff's FAC, which indeed specifies the "misleading statements or advertising."  *See, e.g.*, FAC ¶ 3 ("Defendant continues to sell the Products to unsuspecting customers upon the

---

[7] Under GBL § 349, Plaintiff need not allege specific advertisements or statements, only that Defendant engaged in misleading, consumer-oriented conduct that caused injury.  *See, e.g.*, *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *9 (E.D.N.Y. Sept. 14, 2015).  Furthermore, a Product's labeling suffices as an "advertisement" for purposes of GBL § 350.  *See id.* ("Smucker alleges that Silva 'does not identify any statement from the label or packaging for the Root Beer that he claims is false or misleading.' … I disagree. Paragraphs 7 through 10 of the CAC incorporate actual photographs of the Natural Brew label and packaging, and allege that Smucker represents Natural Brew to be 'natural,' that it 'blends tradition and quality, naturally,' and is the result of 'add[ing] vanilla extract and other natural flavors to our recipe,' all of which are direct quotes from the label.").

misrepresentations … that the Products … display in 'Full HD 1080p,'"); *id.* ¶ 5 ("Mr. Tobin also relied on Defendant's representation that he was purchasing a television with a "Full HD 1080p" display."); *id.* ¶ 12 ("Samsung uniformly represents on the Products' packaging that its LED TVs display in 'Full HD 1080p.'").  Against this backdrop, Defendant's argument is meritless.

Defendant's authority fares no better.  In *Woods v. Maytag Co.*, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010), the plaintiff made only "general references to advertisements and statements."  *Id*. at *16.  Similarly, in *Dixon v. Ford Motor Co.*, 2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015), the plaintiff "[did] not specifically identify any of [defendant's] representations as deceptive."  *Id.* at *8. Here, Plaintiff goes beyond "general references" by specifically identifying Defendant's advertising verbatim.  *See supra*.  Accordingly, *Woods* and *Dixon* bear no resemblance to the instant case.  Defendant's reliance on *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) is also misplaced.  There, the plaintiff "claim[ed] that Estee Lauder's 'efficacy claims' [were] affirmatively untrue, yet she "fail[ed] to allege what the specific ingredients in each product are and that these ingredients lack the ability to improve skin appearance."  *Id.* at 258. But here, Plaintiff's allegations set forth in detail the misleading statements and why they are misleading.  *See* FAC ¶ 1 ("The defect manifests itself in the form of overheating, which results in burning, melting, and in some instances, causing

23

permanent vertical and/or horizontal lines to appear on the television screen, as well as other video anomalies, which obscure the viewing screen …"); *id.* ¶ 11 ("Samsung LED TVs are fatally overheating" resulting in "burning, melting, causing permanent horizontal and/or vertical lines to appear on the TV's screen, as well as other video anomalies"); *id.* ¶ 12 ("Samsung uniformly represents on the Products' packaging that its LED TVs display in 'Full HD 1080p'" . . . However, due to the Products' manufacturing defect, a portion, if not all, of the Products' pixels on the screen become blacked out and/or fatally obscured"). That is sufficient.

### B. Defendant's Limited Warranty Did Not Render Its Statements and Omissions Any Less Misleading

Next, relying on *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304 (S.D.N.Y. 2017),[8] Defendant argues that no consumer could be misled due to "the express disclaimer in the Limited Warranty."[9] MTD at 34-35. But this argument

---

[8] Defendant's reliance on *Kommer* is misplaced. There, although the plaintiff alleged he thought he was buying "individually designed" orthotic inserts, the court held that the "over-the-counter nature of the product ha[d] become readily apparent" once the consumer "[wa]s directed to select a pre-packaged Insert stacked along shelves on the side of the Kiosk." *Kommer*, 2017 WL 2231162, at *5. Here, to the contrary, the nature of the Products is not "readily apparent" due to Defendant's material omissions/misrepresentations.

[9] Plaintiff maintains that Defendant's Limited Warranty is unconscionable based on, among other things, Defendant's exclusive knowledge of the defect at the time of Plaintiff's purchase. That alone is a sufficient basis to reject Defendant's argument. *See, e.g.*, *Klakis v. Nationwide Leisure Corp.*, 422 N.Y.S.2d 407, 411

is not credible.  "[W]hether the labeling as a whole is misleading to an average consumer is a question of fact."  *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *9 (D.N.J. June 26, 2012) (Linares, J.); *see also Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 469 (App. Div. 2001) ("the determination whether an advertisement is misleading is ordinarily for the trier of fact—here the jury—to decide); *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645 (App. Div. 2002) ("Whether an advertisement is misleading presents a question of fact in most cases").  Here, it is particularly plausible that a consumer would see Defendant's promise that its TV provides "Full HD 1080p" resolution prior to his purchase and not see the Limited Warranty buried in the manual which is not even accessible until after purchase.  In addition, as discussed previously, that disclosure says nothing about manufacturing defects.  "Regardless, under GBL § 349, 'the mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations.'"  *Orellana v. Macy's Retail Holdings, Inc.*, 2018 WL 3368716, at *14 (S.D.N.Y. 2018); *see id.* ("Rather, a misrepresentation is not cured as a matter of law by a contradictory disclaimer, at least where the subject matter of the misrepresentation is within the defendant's control.").

--------------------

(1st Dep't 1979) (disclaimer void since it "strikes at the heart of the performance bargained for under the agreement").

25

*Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314 (2002) is instructive.  There, the defendants made certain misleading representations regarding the quality of their internet service but also made disclaimers in their service agreement stating that "the service is provided on an 'as is' or 'as available' basis." *Id.* at 323.  The New York Court of Appeals concluded that these disclaimers were insufficient to render the representation about service quality not misleading, because the quality of the service was allegedly "defective due to malfunctions largely or wholly within defendants' control" and the defendants allegedly "knew this to be the case" and the "promotional representations were therefore knowingly deceptive." *Id*. at 326.  Similarly, in *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 168-69 (S.D.N.Y. 2014), the defendant operator of a job placement website argued that representations on its website about the quality of job listings—"experts pre-screen all jobs so they're always a $100K+"—were not misleading in light of the terms of use which notified users that the postings were provided on an "as is" or "as available basis." *Id.*  The court concluded that the defendant's failure to pre-screen jobs as advertised "would be a failure wholly within the defendant's control." *Id.* at 169.  "Therefore, the defendant's representations ... would be 'knowingly deceptive' and misleading." *Id.*

Here too, the subject matter of the misrepresentation was exclusively in

26

Defendant's control.  *See, e.g.*, FAC ¶ 16 ("Online complaints ... show that Defendant has been aware of the defect since at least 2014.  ... Nevertheless, Defendant continues to sell the Products to unsuspecting customers upon the misrepresentations/omissions that the Products are fit for their intended purpose and that consumers are purchasing televisions that display in "Full HD 1080p," perpetrating massive consumer fraud on the American public, none of whom would have purchased the Products had they known of this highly material fact.").  Accordingly, Defendant cannot hide behind its disclaimer to shield itself from liability for deceptive and misleading conduct.  *See Orellana*, 2018 WL 3368716, at *15 (holding that, despite presence of Macy's disclaimer, "plaintiff would still have alleged an actionable misleading practice" because alleged misleading practice was "solely within Macy's control").

### C.   Plaintiff Alleges Financial Injury

As a last-ditch effort, Defendant argues that "to the extent Plaintiff's damages are based on his assertion that he would not have purchased the TV had he known about the malfunction, that is not a cognizable basis for relief," and that Plaintiff must allege "that the produce price was inflated due to the misleading advertisements or claims.  MTD at 35.  Once again, Defendant ignores Plaintiff's allegations.  Plaintiff specifically alleges that the price of the TV was misleading as a result of Defendant's fraudulent statements and omissions.  *See* FAC ¶ 64

27

("Plaintiff and New York Subclass members were injured as a direct and proximate result of Defendant's violation because … (c) they overpaid for the Products because they were sold [at] a price premium on account of the misrepresentations and/or omissions."); *id.* ¶ 71 (same).  Nothing more is required. *See In re Gerber*, 2014 WL 1310038, at *10 (Linares, J.) ("She alleges that she saw and relied on the alleged misrepresentations in television commercials and on the product labels, and that she paid a premium for the product based on these alleged misrepresentations.  These allegations are sufficient . . . ."); *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.").

## D.    Defendant Does Not Challenge Plaintiff's GBL Claims Based On Its Material Omissions

Additionally, Defendant ignores that Plaintiff's G.B.L. claims are also premised on Defendant's omission of material facts concerning the defective nature of the Products. [10]   *See, e.g.*, FAC ¶¶ 61, 63, 64 ("Defendant committed

_____

[10] *See Dixon v. Ford Motor Co.*, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015) ("A plaintiff can state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this information."); *POM Wonderful LLC v. Organic Juice USA, Inc.*, 2010 WL 3912222, at *3 (S.D.N.Y. Sept. 29, 2010) ("Claims under G.B.L. § 350 require a showing that 'the defendant made …. omissions that were likely to

unfair or deceptive acts and practices by misrepresenting … and also by omitting facts about the defective nature of the Samsung LED TVs"); *id.* ¶¶ 68, 70, 71 (same).  Yet Defendant <u>fails to address this</u> in its motion to dismiss.  Accordingly, any arguments against such on reply shall be deemed waived.  Even so, Plaintiff has sufficiently alleged violations of G.B.L. §§ 349 and 350 based on Defendant's material omissions. *See Tomassini v. FCA U.S. LLC*, 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015) ("[A] business's failure to disclose to consumers' material, relevant information the business alone possesses is actionable under [GBL] § 349 without reference to any special relationship between the consumer and the business.") (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)); *Szymczak v. Nissan N. Am.*, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011) (denying motion to dismiss GBL claim where the plaintiffs alleged that manufacturer failed to disclose a defect and that the failure to disclose was likely to mislead a reasonable consumer); *Garcia v. Chrysler Group LLC*, 2015 WL 5123134, at *2, 21 (S.D.N.Y. Sept. 1, 2015) (denying motion to dismiss GBL claim where the plaintiffs alleged that manufacturer knew that vehicle component system was prone to sudden failure and failed to disclose the defect to consumers).

---

mislead a reasonable consumer under the circumstances.'") (quoting *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 54-55 (N.Y. App. Div. 2004))

## V.   PLAINTIFF HAS STANDING TO PURSUE CLAIMS FOR PRODUCTS NOT PURCHASED

Defendant argues that Plaintiff "lacks Article III standing" to assert claims regarding television models he did not purchase.  MTD at 36.  That argument is not only premature on a motion to dismiss, but it conflates class standing with Article III standing and is wrong on the merits.

Class standing (a named plaintiff's ability to represent absent class members) and Article III standing (the constitutional requirement that a plaintiff must have suffered an injury in fact that is concrete and particularized) are distinct concepts.  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("class standing . . . does not turn on whether [Plaintiff] would have statutory or Article III standing"); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *14 (D.N.J. June 26, 2012) (Linares, J.) ("In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted.") (internal citation omitted)).

Here, Plaintiff has Article III standing because he alleges that he "would not have purchased the Samsung LED TV, or would have done so on materially different terms, had he known that the Product would soon thereafter overheat and develop permanent vertical lines on its screen, rendering the Product useless, and robbing him of the full advertised display."  FAC ¶ 5.

30

To the extent that Defendant means to challenge Plaintiff's class standing, that argument is premature at the pleadings stage. *See Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975) (notwithstanding the fact that a plaintiff lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant); *Stewart*, 2012 WL 4168584, at *16 (finding issue of class standing "inappropriate at [the motion to dismiss] stage of the litigation"); *In re Gerber Probiotic Sales Practices Litig.*, 2014 WL 5092920, at *6 (D.N.J. Oct. 10, 2014) (Linares, J.) ("Following the approach taken by *Haas* and *Stewart*, the Court finds that dismissal is inappropriate at this stage of the litigation.").

Regardless, Plaintiff has standing to represent not only consumers who purchased the same model that he did, but also those who purchased other models of Samsung TVs that suffered from the same exact defect.[11]  All of the class products are Samsung LED TVs advertised as having "Full HD 1080p" resolution."  FAC ¶ 12.  All of the products suffer from the same manufacturing defect that causes "a portion, if not all, of the Products' pixels on the screen

_____

[11] Defendant's attempt to characterize the consumer complaints in Plaintiff's FAC as "an array of unrelated problems" is disingenuous.  MTD FAC at 36.  The consumer complaints cited are just a tiny sample of numerous complaints where consumers report the <u>identical</u> overheating defect that Plaintiff complains of.

become blacked out and/or fatally obscured." *Id.* All of the TVs have the same "manufacturer and have essentially identical electrical, physical, and functional characteristics, which utilize the same or similar components for each model." *Id.* ¶ 15. These similarities are more than sufficient to support class standing for other product models. *See, e.g.*, *Neuss v. Rubi Rose LLC*, 2017 WL 2367056, at *6 (D.N.J. May 31, 2017) (citing *Haas* for the proposition that class standing lies where "the named-plaintiff had standing to pursue two closely related claims against the same defendant").

## VI.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss should be denied in their entirety.  Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend.  *See, e.g.*, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

Dated:  December 3, 2018

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      */s/ Scott A. Bursor*
Scott A. Bursor

Scott A. Bursor (*Pro Hac Vice*)
Andrew J. Obergfell
888 Seventh Avenue

32

New York, NY  10019
Telephone: (646) 837-7129
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          aobergfell@bursor.com

*Attorneys for Plaintiff*