NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD TOBIN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Civil Action No.: 18-12473 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Samsung Electronics America, Inc.'s Motion to Dismiss Plaintiff Edward Tobin's First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 21). Plaintiff filed opposition and Defendant replied thereto. (ECF Nos. 27, 29). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court hereby grants Defendant's Motion to the extent that it seeks to dismiss Plaintiff's unjust enrichment and breach of implied warranty claims with prejudice and dismiss his fraud-based claims without prejudice, but the Court hereby denies Defendant's Motion to the extent that it seeks to dismiss Plaintiff's remaining claims.

# I. BACKGROUND[1]

Plaintiff is a citizen of New York and Defendant is a corporation under New York law with a principal place of business in New Jersey. (FAC ¶¶ 5–6). On November 24, 2016, Plaintiff purchased a LED television designed by Defendant from a Best Buy in New York for approximately $325.86. (FAC ¶ 5). According to Plaintiff, the packaging of Defendant's LED television states that it displays in "Full HD 1080p," which means that the television has "high-definition video characterized by 1,920 pixels displayed across the screen horizontally and 1,080 pixels down the screen vertically." (FAC ¶ 12).

Plaintiff was aware that the LED television designed by Defendant came with a limited warranty. (FAC ¶ 5). The limited warranty stated that the original purchaser would have a one-year warranty on parts and labor of the product that began to run from the date of purchase. (ECF No. 21-4 at 19; *see also* FAC ¶ 5 (referencing the limited warranty)). Specifically, the limited warranty claimed that Defendant would "repair or replace this product, at [Defendant's] option and at no charge as stipulated herein, with new or reconditioned parts or products if found to be defective during the limited warranty period specified above." (ECF No. 21-4 at 19). The limited warranty further stated that it covered "manufacturing defects in materials and workmanship encountered in normal . . . noncommercial use of" the LED television, and that service could "only be performed by a [Defendant] authorized service center." (*Id.*). Lastly, the limited warranty explained in relevant part that:

---

[1] This background is derived from Plaintiff's FAC, (ECF No. 20 ("FAC")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009). The Court denies Plaintiff's request for judicial notice of several exhibits attached to his opposition, (ECF No. 28), and shall only consider the facts pled in the FAC, which is the appropriate consideration at this stage of the proceedings.

> THERE ARE NO EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE, AND NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE, AND NO OTHER EXPRESS WARRANTY OR GUARANTY GIVEN BY ANY PERSON, FIRM OR CORPORATION WITH RESPECT TO THIS PRODUCT SHALL BE BINDING ON SAMSUNG.

(*Id.* at 20).

Within several months of Plaintiff's purchase, the LED television allegedly overheated, causing vertical lines throughout the side of the screen and rendering the television "unfit for use." (FAC ¶ 5). Plaintiff claims that he then "contacted an authorized [Defendant] Certified Service center" about the defect, and was told by a representative that the price to repair the television would be greater than purchasing a new one regardless of the limited warranty. (*Id.*). Plaintiff further alleges that Best Buy would not honor Defendant's limited warranty. (*Id.*).

According to Plaintiff, several models of Defendant's LED televisions, including the one purchased by Plaintiff, suffer from a similar design defect that causes the televisions to overheat despite normal levels of use, rendering them inoperable. (FAC ¶¶ 1, 10–11, 15). Specifically, Plaintiff alleges that this overheating defect causes the pixels on the LED televisions screen to "become blacked out and/or fatally obscured," which deprives purchasers of the promised "Full HD 1080p" display. (FAC ¶ 12). Plaintiff further claims that the LED televisions become inoperable much earlier than would be expected of this product, which allegedly should be operable for about eight years. (FAC ¶¶ 10–11). Additionally, Plaintiff alleges that Defendant has been aware of this defect since 2014 based on numerous customer complaints posted on Defendant's website and to the Consumer Product Safety Commission. (FAC ¶¶ 13–16). These complaints consisted of customers stating that the televisions were overheating and obstructing the

3

LED television display. (*Id.*). Plaintiff alleges that he and multiple other costumers suffered damages as a result of the design defect. (FAC ¶ 7). In particular, Plaintiff claims that he: (1) relied on Defendant's representation that the LED television would perform its intended use and display in "Full HD 1080p"; and (2) would not have purchased the television, "or would have done so on materially different terms," if he was aware of the defect. (FAC ¶ 5).

Accordingly, Plaintiff brought this Class Action Complaint on August 6, 2018. (ECF No. 1). After being granted leave to amend, Plaintiff filed the FAC on October 25, 2018, asserting the following causes of action: (1) Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA") ("Count One"); (2) Breach of Express Warranty ("Count Two"); (3) Breach of Implied Warranty of Merchantability ("Count Three"); (4) Unjust Enrichment ("Count Four"); (5) Violation of New York General Business Law § 349 ("NYGBL § 349") ("Count Five"); (6) Violation of New York General Business Law § 350 ("NYGBL § 350") ("Count Six"); (7) Fraud ("Count Seven"); and (8) Fraudulent Concealment ("Count Eight"). (FAC ¶¶ 25–85). Defendant now moves to dismiss.

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must: (1) "tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. DISCUSSION

**A. Breach of Express Warranty (Count Two)**

1. Choice of Law

This Court applies the choice of law analysis of New Jersey, the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007). Therefore, the Court shall apply the two-part most significant relationship test. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011), *aff'd sub nom.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 204 (3d Cir. 2013). Under this test, the Court must first determine whether or not a conflict exists between the state laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). "That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them." *Id.* (internal quotations omitted).

If there is no conflict, then New Jersey law applies. *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (citing *P.V.*, 197 N.J. at 143). If there is a conflict, the Court will move onto the second part of the test and determine which state "has the most significant relationship with the parties." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017) (quoting *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010)).

Here, the parties each state—and the Court agrees—that there is no conflict between New York and New Jersey law when it comes to analyzing Plaintiff's breach of express warranty claim. (ECF No. 21-5 at 9; ECF No. 27 at 8). Indeed, the parties repeatedly contend in their briefing that the outcome for Plaintiff's breach of express warranty claim would be no different under either New York or New Jersey law. (*See generally* ECF Nos. 21-5, 27). Accordingly, for purposes of this motion, the Court will apply New Jersey law in its analysis of Count Two. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.2 (3d Cir. 2010) ("[Courts] generally apply the law of the forum state—here, New Jersey—to state law claims unless there is an objection by any of the parties, and since there is no objection by either party, we apply New Jersey law to [the plaintiff's] breach of express warranty claim").

2. The Warranty at Issue

"Under New Jersey law, to state a claim for breach of express warranty, Plaintiff[] must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 324 (D.N.J. 2014) (quotation and citation omitted). An "express warranty" is defined as:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. 12A:2-313.

"A statement can amount to a warranty, even if unintended to be such by the seller, 'if it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.'" *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir.1993) (analyzing New Jersey law and quoting *Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*, 416 A.2d 394, 396 (1980)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 120 (2014). Furthermore, it is usually a question of fact whether or not a given representation qualifies as an express warranty. *Snyder v. Farnam Co., Inc.*, 792 F. Supp. 2d 712, 721–22 (D.N.J. 2011).

Here, Defendant argues that Plaintiff's claim for breach of express warranty must be dismissed because Plaintiff failed to notify Defendant or to seek to cure the problem within the proscribed one-year time period of the limited warranty. (ECF No. 21-5 at 10). In making this argument, Defendant relies on a case previously decided by this Court. *See Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *1 (D.N.J. Sept. 30, 2008). In that case, the plaintiff, Cooper, bought a television advertised as a "1080p" display, but the television did "not display 1080p input from 1080p sources that became available at that time." *Id.* Cooper then brought a case against the defendant for breach of the limited warranty, which had similar language

to the warranty in this case and required Cooper to notify the defendant of a problem with the television within one year of purchase. *Id.* at *2–3. This Court dismissed Cooper's claim, finding that the defendant could not have breached the limited warranty because Cooper failed to bring the problem to its attention. *Id.* at *4. The Third Circuit affirmed this determination. *See Cooper*, 374 F. App'x at 255.

In relying on this case, however, Defendant fails to consider that this Court's decision in *Cooper* was based in part on the fact that Cooper was bringing his claim under the limited warranty. *Id.*; *see also Dzielak*, 26 F. Supp. 3d at 327 n.12 (differentiating *Cooper* on the same basis). Unlike the plaintiff in *Cooper*, Plaintiff in the current case states that his express warranty claim is not based on the limited warranty inside the packaging, but rather on the display of "Full HD 1080p" on the outer packaging of the LED television. (ECF No. 27 at 4).

Though Defendant argues that Plaintiff is engaging in an improper attempt to further amend the pleadings, the Court nevertheless finds it sufficiently clear from the allegations in the FAC that Plaintiff's express warranty is based on the "Full HD 1080p" representation. For example, Plaintiff alleges in the FAC that: (1) the packaging of Defendant's products "uniformly represent[ed]" that they display in "Full HD 1080p"; (2) Defendant "expressly warranted" that the display would be in "Full HD 1080p"; (3) Plaintiff "relied on Defendant's representation that he was purchasing a television with a 'Full HD 1080p' display" in buying the LED television; and (4) Plaintiff was damaged because the product's defect prevented it from operating with a "Full HD 1080p" display. (FAC ¶¶ 5, 12, 36–37, 40). These allegations are sufficient to plead the existence of an express warranty. *See Taylor v. JVC Ams. Corp.*, No. 07-4059, 2008 WL 2242451, at *5 (D.N.J. May 30, 2008) (explaining that the plaintiff sufficiently pled a warranty claim based on allegations that the product's packaging stated it was a "1080p" television, but in fact it did not

support a 1080p signal). Therefore, the Court shall analyze Plaintiff's express warranty claim as it relates to the "Full HD 1080p" representation on the LED television's packaging.

3. Defendant's Arguments

Defendant claims that Plaintiff fails to state a claim for breach of an express warranty even if his claim is based on the "Full HD 1080p" representation, because: (1) the limited warranty applies to the alleged defect and preempts the express warranty relied on by Plaintiff; and (2) the LED television did possess a "Full HD 1080p" display when Plaintiff purchased it and therefore Defendant did not violate the express warranty relied on by Plaintiff. (ECF No. 29 at 2–9). The Court shall consider each of these arguments in turn, and rejects them both at this time.

a. *Application of the Limited Warranty*

Defendant first argues that its limited warranty applies to the defect alleged by Plaintiff and specifically disclaims any broader remedy regarding the defect which caused the inoperability of the LED television. (ECF No. 29 at 3–4). As stated above, the limited warranty covers "manufacturing defects in materials and workmanship encountered in normal . . . noncommercial use of" the LED television, and states that "THERE ARE NO EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE." (ECF No. 21-4 at 19–20).

Courts in New Jersey are hesitant to completely exclude express warranties based on a disclaimer. *See Gladden v. Cadillac Motor Car Div.*, 83 N.J. 320, 330 (1980); *see also Dzielak*, 26 F. Supp. 3d at 327 ("The courts have been particularly wary of disclaimers that take away with one hand what was given with the other."). Therefore, the disclaimer of an express warranty must be "clear and conspicuous." *Id.* at 331. "To be conspicuous, a disclaimer must be 'so written that a reasonable person against whom it is to operate ought to have noticed it.'" *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 470 (D.N.J. 2007) (quoting *Gladden*, 83 N.J. at 331).

Furthermore, the Court may find a disclaimer to be "inoperable if 'unreasonably inconsistent' with the express warranties given." *Id.* (quoting *Gladden*, 83 N.J. at 332).

In his opposition, Plaintiff points to a case that is instructive to the Court's current analysis. *See Dzielak*, 26 F. Supp. 3d at 325. In that case, the plaintiff alleged that she bought a washing machine which represented on its packaging that it "exceed[ed] certain minimum standards for energy efficiency," but in reality the washing machine did not meet these efficiency levels. *Id.* After the plaintiff brought suit alleging breach of express warranty, the defendant moved to dismiss, arguing among other things that this more general energy efficiency warranty was disclaimed by the defendant's exclusive limited warranty. *Id.* at 326. The Court rejected the defendant's argument, and found that the limited warranty, which did not mention energy efficiency, did "not constitute an explicit and conspicuous disclaimer of the [energy efficiency] express warranty." *Id.* at 326–27.

Similar to the decision in *Dzielak*, the Court cannot find at this time that Defendant's limited warranty merits dismissal of Plaintiff's express warranty claim, because Plaintiff is alleging a type of defect not covered by the limited warranty.[2] On the one hand, it is uncontested by the parties that the limited warranty only applies to manufacturing defects. (ECF No. 21-5 at 1–2; ECF No. 27 at 4–5; ECF No. 29 at 5). In fact, the Third Circuit considered identical language to that in the limited warranty when it affirmed this Court's decision in *Cooper*, and explained that said language only applies to manufacturing defects, and not a design defect such as the one alleged by Cooper. *Cooper*, 347 F. App'x at 253 (analyzing limited warranty that stated it applied to "manufacturing defects in materials and workmanship").

---

[2] For ease of reference, under New Jersey law, a manufacturing defect occurs when a product "deviated from the design specifications . . . of the manufacturer or from otherwise identical units manufactured," while a design defect occurs when a product "was designed in a defective manner." N.J.S.A. 2A:58C-2. The definitions under New York law are substantially similar. *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 n.3 (1995) (defining these terms).

On the other hand, Plaintiff's allegations in the FAC relate to a design defect. Specifically, Plaintiff alleges that: (1) certain models of Defendant's LED televisions suffer from an "identical design defect" that causes them to overheat after a short period of normal use and renders the LED televisions inoperable; (2) Defendant's LED televisions cannot display in "Full HD 1080p" because they are "designed defectively"; (3) Defendant was aware prior to Plaintiff's purchase that its LED televisions suffer from a design defect; and (4) based on this design defect, Plaintiff did not receive the value of the LED television as it was warranted and suffered damages thereto. (FAC ¶¶ 1, 5, 45, 48, 75, 80). Accordingly, the disclaimer in the limited warranty, which does not mention design defects, cannot be construed at this time as a conspicuous and explicit waiver of Plaintiff's alleged "Full HD 1080p" express warranty. *See Dzielak*, 26 F. Supp. 3d at 326–27 (reaching similar conclusion).

In reaching this decision, the Court has considered Defendant's argument that Plaintiff is in fact pleading a manufacturing defect, and not a design defect. (ECF No. 29 at 4). That argument does not affect the Court's determination at this early stage in the proceedings because, as discussed in the paragraph above, Plaintiff has sufficiently alleged that the problems with the LED television were caused by a design defect. *See Alin v. Am. Honda Motor Co.*, Civ. 08–4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."). However, if discovery shows that the malfunction in the LED television—and consequently the nature of Plaintiff's express warranty claim—relates to a manufacturing defect rather than a design defect, then the Court may reconsider at the summary judgment stage whether Plaintiff's claims are disclaimed by the limited

warranty. Nevertheless, accepting the facts asserted by Plaintiff as true, the Court cannot conclude at this time that Plaintiff's express warranty claim does not survive based on Defendant's limited warranty.

Furthermore, the Court alternatively rejects Defendant's first argument because Plaintiff has alleged that Defendant was unconscionable in selling the LED television. For example, Plaintiff alleges that Defendant "knew that the Products would not display in 'Full HD 1080p,' that the Products were defective at the time of sale, and that they would fail well before their useful lives, thereby rending [sic] this time limitation insufficient, inadequate, and unconscionable." (FAC ¶ 39). Plaintiff further alleges that the one-year period of the limited warranty was "in tiny font, and buried at the very end of the User Manual," and was "grossly inadequate to protect" Plaintiff and other consumers. (FAC ¶ 50). It would be inappropriate for this Court to reach a determination on whether or not Defendant's conduct was unconscionable, "as unconscionability is more suitable for decision at summary judgment." *Cooper*, 2008 WL 4513924, at *3, *aff'd* 374 F. App'x at 255. Therefore, the Court denies Defendant's Motion to the extent that it seeks to dismiss the FAC based on the application of the limited warranty.

    b.  *Breach of the "HD 1080p" Express Warranty*

Defendant next argues that the sale of the LED television to Plaintiff did not breach the "Full HD 1080p" express warranty because the LED television had a "Full HD 1080p" display as warranted when it was purchased by Plaintiff and only later malfunctioned. (ECF No. 29 at 2–3, 7–8). The Court is unpersuaded by this argument. As stated above, Plaintiff is alleging that several models of Defendant's LED televisions are designed in such a way that they overheat and malfunction within a few months of normal use, rendering them useless. (*See generally* FAC). When taking Plaintiff's allegation that the defect in these models of LED televisions originated in

their design as true, which the Court must at this stage in the proceedings, then said defect necessarily existed at the time the LED televisions were sold even if the defect did not manifest until afterwards. Accordingly, the Court finds that it would be inappropriate to conclude at this early stage of the proceedings that Defendant did not breach the "Full HD 1080p" warranty when, according to Plaintiff, Defendant knowingly sold a defective product. At the very least, this argument is better dealt with at summary judgment, after the parties have had the benefit of discovery to further identify the exact nature of the alleged defect. Accordingly, the Court rejects Defendant's arguments and finds that Count Two survives dismissal.

### B. MMWA (Count One)

As correctly stated by the parties, MMWA claims "stand or fall with [the claimant's] express and implied warranty claims under state law. *See Miller v. Chrysler Grp. LLC*, No. 12-760, 2014 WL 12617598, at *5 (D.N.J. Jun. 30, 2014). This Court has already determined above, *supra* Section III.A.2., that Plaintiff has sufficiently established an express warranty claim. Accordingly, the Court also finds that Plaintiff's MMWA claim survives dismissal.

### C. Fraud-Based Claims (Counts Seven and Eight)

1. Choice of Law

The Court finds that there is no conflict between New York and New Jersey law in analyzing Plaintiff's fraud-based claims. Defendant argues that a conflict exists because New York courts—and not New Jersey courts—apply the "economic loss rule" to claims of fraud. (ECF No. 21-5 at 25 n.10). However, this Court's review of the case law reveals that courts in New York do not apply the economic loss rule "to intentional torts such as fraud." *Aretakis v. Caesars Entm't*, No. 16-8751, 2018 WL 1069450, at *12 (S.D.N.Y. Feb. 23, 2018); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015). Furthermore, as Defendant correctly points

out, a federal court applies the procedural laws of its forum state when evaluating state law claims. *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008) ("Under New Jersey's choice-of-law rules, a court sitting in New Jersey is required to apply New Jersey rules to procedural matters even where those same rules require the application of the substantive law of another state"). As explained below, the Court's current determination predominantly pertains to Plaintiff's compliance with the Federal Rules of Civil Procedure. Accordingly, the Court will apply New Jersey law in its analysis of Counts Seven and Eight for purposes of this motion.

2. <u>Heightened Pleading Standard</u>

Defendant asserts that Plaintiff's fraud-based claims (claims for fraud and fraudulent concealment) fail to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). (ECF No. 21-5 at 25–26). Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy Rule 9(b), "the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). In other words, Plaintiff must allege "the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation and quotation omitted), *overruled on other grounds by Phillips v. Cty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). However, dismissal is appropriate where a complaint merely alleges conclusory assertions that a defendant knew and failed to disclose material facts. *See Weske v. Samsung Elecs. Am., Inc.,* No. 10-4811, 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012); *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *3 (D.N.J. Mar. 14, 2012).

Here, Plaintiff sufficiently states the "who, what, and where" of the alleged fraud. Specifically, Plaintiff claims that Defendant was aware of a design defect in its LED television that caused it to overheat, but omitted said defect when it advertised and sold its product to Plaintiff as having a "Full HD 1080p" display at a Best Buy in New York. (*See* FAC ¶¶ 5, 74–85). Plaintiff also alleges that he relied on the "HD 1080p" representation on the product's packaging when he bought the LED television for $325.86, and that he would not have bought the product had Defendant not omitted the defect. (*See id.*).

However, Plaintiff fails to state specific facts that Defendant had knowledge of the alleged defect in order to commit fraud. In the FAC, Plaintiff broadly states that Defendant learned of the defect in 2014 through customer reviews, and proceeds to list numerous unverified and unattributed complaints of a design defect in Defendant's LED televisions. (FAC ¶¶ 13–16). The Court finds that these allegations are insufficient, because Plaintiff fails to identify: (1) specifically who these complaints were made by; (2) specifically who received these complaints; (3) how said complaints were in Defendant's exclusive control; and (4) precisely when these complaints alerted Defendant to the defect. *See Spera v. Samsung Elecs. Am., Inc.*, No. 12-5412, 2014 WL 1334256, at *7 (D.N.J. Apr. 2, 2014) (concluding same); *Weske,* 2012 WL 833003, at *6 (same). Accordingly, the Court shall dismiss Counts Seven and Eight without prejudice and grant Plaintiff leave to amend his allegations for these causes of action in line with the Court's determination.

**D. New York General Business Law Claims (Counts Five and Six)**

A claim under NYGBL § 349 requires Plaintiff to show "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300

(2d Cir. 2015)). The standard for NYGBL § 350 is identical but only applies to false advertising and requires "proof of actual reliance." *Tomasino v. Estee Lauder Co., Inc.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).

Here, Plaintiff alleges that Defendant misrepresented that its LED television would display in "Full HD 1080p" when in reality Defendant was aware that its LED televisions suffered from a design defect which rendered them useless. (*See* FAC ¶¶ 59–77). Plaintiff further alleges that he and other consumers: (1) actually relied on Defendant's false advertisement shown on the LED televisions' packaging in purchasing the product; (2) would not have purchased the LED television had they been aware of the defect; and (3) overpaid and were damaged in purchasing the LED televisions. (*See id.*). The Court finds that these allegations, when viewed in the light most favorable to Plaintiff, are sufficient to allow Plaintiff's claims to survive dismissal. *See In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2014 WL 1310038, at *10 (D.N.J. Mar. 31, 2014) (concluding same) (citing *Ackerman v. Coca-Cola Co.*, No. 09-395, 2013 WL 7044866, at *2 n.5 (E.D.N.Y. Jul. 18, 2013)); *Szymczak v. Nissan N. Am.*, No. 10-7493, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011) (concluding same). Accordingly, the Court shall deny Defendant's Motion to the extent that it seeks to dismiss Counts Five and Six.

### E. Unopposed Claims (Counts Three and Four)

1. Choice of Law

The Court finds that there is a conflict between New York and New Jersey law as it pertains to Count Three. The Court reaches this conclusion because New York law requires privity in pleading a breach of implied warranty claim, but New Jersey law does not. *Compare Gould v. Helen of Troy Ltd.*, No. 16-2033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017) ("The law is clear that, absent any privity of contract between Plaintiff and Defendant, a breach of implied

warranty claim cannot be sustained") (internal quotations and citations omitted), *with Cooper*, 2008 WL 4513924, at *5 ("New Jersey has dispensed with the requirement of vertical privity in implied warranty claims"). As for step two of the most significant relationship test, the Court agrees with Defendant that New York is the more significant forum, because Plaintiff lives, bought the LED television, received the warranties, and was supposedly deceived in New York. Plaintiff does not appear to contest this conclusion, as he cites to New York law throughout his brief in opposition. (*See generally* ECF No. 27). Therefore, the Court will apply New York law in analyzing Count Three for purposes of this motion.

Conversely, there is no conflict between New York and New Jersey law with regards to Plaintiff's claim for unjust enrichment. *See MZL Capital Holdings, Inc. v. TD Bank, N.A.*, No. 14-5772, 2015 WL 4914695, at *9 (D.N.J. Aug. 18, 2015) (stating elements of both and concluding same). Accordingly, for purposes of this motion, the Court shall apply New Jersey law in analyzing Count Four.

2. Waiver and Failure to State a Claim

Plaintiff does not oppose Defendant's Motion to Dismiss Counts Three and Four. (*See generally* ECF No. 27). "Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." *Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009)). It would appear that Plaintiff has waived Counts Three and Four in the FAC. Nevertheless, the Court is required to address Defendant's Motion to Dismiss on the merits even if it is unopposed by Plaintiff. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (holding that

"a Rule 12(b)(6) motion should not be granted without an analysis of the merits of the underlying complaint"); *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding the same).

The Court is persuaded by Defendant's substantive arguments that dismissal of Counts Three and Four is appropriate in this case. Specifically, for Count Three, Defendant argues that Plaintiff cannot prove that the parties were in privity under New York law because Plaintiff purchased the LED television from a retailer, instead of directly from Defendant, *i.e.*, the manufacturer. (ECF No. 21-5 at 18). The Court agrees with this assessment, as other courts applying New York law have dismissed on this basis. *See Gould,* 2017 WL 1319810, at *5.

As for Count Four, Defendant correctly points out that Plaintiff is barred from pursuing a claim of unjust enrichment because his allegations relate to Defendant's representation in an express warranty. *See All Seasons Home Improvement Co. v. Arch Concept Constr., Inc.,* No. 16-751, 2018 WL 3928787, at *8 (D.N.J. Aug. 16, 2018) (concluding same and explaining that a plaintiff cannot pursue a quasi-contract claim such as unjust enrichment when "there is an express contract covering the identical subject matter of the claim") (citations and quotations omitted); *Hatteras Press, Inc. v. Avanti Comput. Sys. Ltd.*, No. 16-5420, 2017 WL 2838349, at *5–6 (D.N.J. June 30, 2017) (concluding same). Accordingly, the Court shall dismiss Counts Three and Four as waived or alternatively based on Defendant's arguments.

**F. Class Standing**

Finally, Defendant argues that Plaintiff does not have standing to sue for the defective LED televisions that he did not personally purchase. (ECF No. 21-5 at 36). However, as Plaintiff seeks to bring a putative class action in the FAC and alleges that all potential class members suffered a similar harm under similar circumstances, it would be premature for the Court to determine Plaintiff's class standing on a motion to dismiss at such an early stage of the proceedings. *See*

*Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012) (stating that it would be "inappropriate at [the motion to dismiss] stage of the litigation" to determine class standing). Therefore, the Court denies Defendant's Motion at this time to the extent that it seeks to dismiss Plaintiff's FAC for lack of standing.

## IV. **CONCLUSION**

For the aforementioned reasons, the Court shall grant in part and deny in part Defendant's Motion to Dismiss. Specifically, the Court shall: (1) dismiss Counts Three and Four with prejudice; (2) dismiss Counts Seven and Eight without prejudice; and (3) leave Counts One, Two, Five, and Six as viable at this time. An appropriate Order follows this Opinion.

Dated: March 27th, 2019.

_____
**JOSE L. LINARES**
Chief Judge, United States District Court